(12 Misc. Rep. 590.)

### WARFIELD v. WEEKS et al.

(Supreme Court, Special Term, New York County. May, 1895.)

EQUITABLE COUNTERCLAIM—REPLY.

In an action to compel a conveyance by a trustee of trust property, the answer alleged as a counterclaim that plaintiff had borrowed money from the trustee, and that the trustee had made certain expenditures for plaintiff. The reply stated that the trustee had money in his hands belonging to plaintiff, which he pretended he had invested in securities which he held for her, whereas he had converted it to his own use, and was indebted to plaintiff in a larger sum than the alleged counterclaims. _Held_, that such reply did not set up a counterclaim to defendant's counterclaim, but simply stated facts tending to defeat it.

Action by Bertie D. Warfield against Francis H. Weeks and others to compel a conveyance of trust property.

Treadwell Cleveland and Philip S. Dean, for plaintiff.
George D. Mumford, for defendant Welling.

INGRAHAM, J. The statement that Weeks made to the plaintiff as to her investments in 1885 was a sufficient declaration of trust declaring that Weeks held this mortgage upon the property described in the complaint as trustee for the plaintiff, and that upon the foreclosure of the mortgage, and the purchase by Weeks of the real estate secured thereby, Weeks held that real estate in trust for the plaintiff; and this position is not seriously controverted by the defendants. The only serious question is as to whether the defendants are entitled to have the property conveyed to the plaintiff subject to two liens in favor of Weeks. It is quite important, in determining this question, that we should keep in mind the fact that this defendant assignee stands in Weeks' shoes, having received the property subject to just such trusts and obligations as were upon the property at the time Weeks made the assignment. Welling, as assignee, can make no other or greater claim to the property than Weeks could make, had he not made the assignment, and had he been the sole defendant in this action. It is also quite important to keep in mind the fact that this is an action in equity to enforce equitable remedies, that the plaintiff's title to the property is an equitable title, and that the liens that the defendants seek to enforce are claimed to be equitable liens. These equitable liens are sought to be enforced by what are called "counterclaims" in the answer. The first of these alleged equitable liens arises out of the following facts: After the judgment had been entered foreclosing the mortgage upon the property described in the complaint, the plaintiff borrowed from

Weeks $7,500, and gave a note by which she pledged this mortgage as collateral security for the money advanced to her. The second alleged equitable lien is based upon the fact that, after Weeks bought in the property in his own name, it was in an unfinished condition, and it became necessary for him, in order to complete the building on the property, so that it would be valuable, to expend upon it upwards of $12,000. This sum, the defendant alleges, should be repaid to him. In reply to these so-called counterclaims, the plaintiff alleges that Weeks had in his hands, as belonging to this plaintiff, a large sum of money which he had pretended he had invested for her in securities that he held for her, though in fact he had disposed of these securities, and converted the proceeds thereof to his own use, and was indebted to the plaintiff in a much larger sum of money than the aggregate amount of the alleged equitable liens that the defendants seek to foreclose. Some point has been made by the defendants claiming that this is a counterclaim set up in reply to defeat a counterclaim set up in the answer. It is obvious, however, that this is not a counterclaim in reply, but is a statement of facts which directly tends to defeat the defendants' counterclaim, or application for affirmative relief. The defendants apply to a court of equity to enforce what they allege to be an equitable lien for money advanced, as they claim, for the benefit of the plaintiff, and which should, in equity, be repaid to Weeks by the plaintiff, as a condition, upon her being entitled to a conveyance of the property held in trust for her. As an answer to that application for the enforcement of that counterclaim, plaintiff alleges, and it is conceded, that, at the time of the assignment, Weeks had applied to his own use a sum of money belonging to the plaintiff largely in excess of the amount that he had advanced to the plaintiff, or expended in improving her property. Under those circumstances, it would be extremely inequitable to compel her to pay Weeks, or a person standing in his shoes, any money on account of the advances that Weeks had made to her, or expended for her benefit. He had in fact reimbursed himself for expenditures on her account by appropriating her money for this purpose, and under such circumstances it would be most inequitable to compel the plaintiff to pay him again for the advances or expenditures he had made for her. The defendant, all through his brief, speaks of the "good faith" of Weeks. It is a little difficult for me to understand what he means. I can see nothing but a deliberate and systematic attempt to rob and defraud every one who trusted him; and his treatment of the plaintiff is not, so far as I can see, different from that of the others. It is unnecessary for me to consider whether or not Weeks would have been entitled to enforce these equitable liens, if they had not been satisfied and discharged by his appropriating money of the plaintiff sufficient to pay them. Whatever obligation there was on the plaintiff to discharge them, or to pay Weeks any money on account of them, has been satisfied and discharged by Weeks, in appropriating to his own use sufficient money of the plaintiff to satisfy them.